Next case is John Gammino v. Sprint Communications 2013-16-36 and 2014-10-14 So, we're ready when you are. Good morning. May it please the Court. My name is Gina Stowe and I'm here today on behalf of Appellant John Gammino. The sum of Mr. Gammino's arguments are set forth in the brief and I'd just like to focus on a few primary issues here today. The District Court's primary error was determining that the 125 patent prevents all international access calls as opposed to a select subset of international access calls. The relevant language in dispute is that the invention will prevent a call if it detects predetermined signals used for international dialing. The District Court's interpretation that this requires the prevention of all international access calls improperly substitutes the word all for predetermined, two terms which have very different meanings. This Court has held on many occasions that the word predetermined means determined beforehand. If the 125 patent requires the prevention of all international access calls all the time... Is predetermined defined in the spec anywhere? It is not defined. There are many examples cited in the brief where it talks about selectively enabling calls, but there's no actual definition and when that's the case, you look at the plain meaning which is to determine beforehand. Under the District Court's interpretation, that word has no meaning in the patent, which is contrary to plain construction law which prefers an interpretation that gives meaning to all claims. Why couldn't predetermined signals just refer to all codes relating to all international access calls? Well, that was the argument that the District Court made, but under the... Well, it would render the term superfluous, but if you look at the specification, it supports the interpretation that it only represents some and that it has to be entered into a table by the user. If you look at Tables 1 and 2, for example, they only include three types of international access calls for a total of six. It is undisputed that there are 636 types of international access calls. Tables 1 and 2 wouldn't be embodiments of the invention as the District Court has interpreted it. There would only be one table that would contain 636 access calls and it would never be subject to change. And then the prosecution history is similarly compelling. It's undisputed, even on page 3 of the brief, that Mr. Gamino developed the invention for the New York Court Authority. There's evidence in the prosecution history that they used the patent only for seven types of 636 international access calls. You mentioned the prosecution history and, of course, that's where it seems to me you have your biggest problem. Whatever benefit you get from it, you certainly have language in the prosecution history from Mr. Gamino's prosecuting counsel that is problematical, to say the least. What is the explanation of statements such as, by prosecuting counsel, the fact that the applicant's claimed invention will block all international calls is irrelevant to the decision and so forth? There's various others. What is the explanation of that language with your interpretation? The District Court ignored all this intrinsic evidence and relied, as Your Honor has mentioned, on the prosecution history statement. First of all, in order for that to be deemed a disavowal of the claim language, there needs to be an express and unambiguous disavowal. I will point out that the statement that is at issue, they all contain the phrase all international calls. Even Sprint says that that's not what he means. I understand. So there's an ambiguity. I think that the all international calls is short for all international access calls. Give me a hypothesis to grapple with that explains why that's consistent with your interpretation. Okay. I haven't found one so far. Okay. There's five. I can give you five different reasons. Number one, his technology can block all international access calls. He doesn't say in those statements, which were taken out of context, but I'll get to that, that it always blocks all international access calls. It doesn't say one time in the prosecution history that it always does. These statements were made in the context of discussions with the examiner over prior art. Mr. Gamino was simply explaining that the 125 patent, unlike the other call blocking technologies, teaches and is focused on the prevention of international access calls by virtue of looking at the third plurality. There was never a discussion of predetermined. He never said that you always have to block them. He was talking about this strictly in the context of the prior art, and that never came up. Moreover, the district court relied upon the patent examiners to say that the disclaimer is supported by the fact that the patent examiner believed that it was all international access calls. He didn't believe that. If you go to the patent examiner's own objections, he has an example of a table where he says in the table, and the table is located at, give me a moment, page 412 of the appendix. He sets forth a sample table of international access calls that would be blocked by Mr. Gamino's patent. It includes some, but not all, international access calls. He says, describing those numbers, there is a need to block, for example, the following call. I don't think we have page 412 in the appendix. Oh, let me try to see it. Well, what we do have is A421, where the examiner says, applicant's solution is extremely obvious, but may not be desirable, for it blocks all international calls, legitimate and illegitimate. When you came back and said, the fact that applicant's claimed invention will block all international calls is irrelevant to the decision of patentability of the claimed invention. And then the examiner came back later and said, applicant's claimed invention does not prevent fraudulent calls only. It prevents all international calls. Every single international call is prevented indiscriminately. So, to me, it looks like there's a dialogue going on here between Gamino and the examiner, and whether the claim is patentable or unpatentable, they're having a little bit of a dispute. But the one clear thing that they both agree on is that the claimed invention is blocking all international calls, not just the fraudulent one. Right, meaning legitimate calls and fraudulent calls. First of all, just to put the prior discussion in context, there's two things going on. Number one, there's other call-blocking technologies. And the examiner was saying, well, you've got all these call-blocking technologies. Why can't you just use, for example, this table and just put all the numbers in? Or this other patent, Vamonti, which is concerned with blocking calls when the access carrier doesn't want international access calls. And when he's saying my calls block international calls, basically what he's saying is my patent is the only one that is teaching strictly the prevention and detection of international access calls by looking at the third plurality. He's not discussing predetermined. He's saying the Vamonti patent, for example, that is looking at whether an access carrier wants international calls and preventing on that basis by looking at the second plurality, which says what the access carrier is. This patent doesn't do that. This patent looks at the third plurality and blocks on that basis. There are statements in the prosecution history, as well as the plain language, which at a minimum create an ambiguity. For example, if you go to page 355 of the appendix, Sprint cites to the language that says the key to my claimed invention is that the third plurality of digits are evaluated to determine if they are international dialing digits. He then goes on to say it is because my claimed invention looks for international dialing digits and the third plurality of digits and then at least partially prevents the call if international dialing digits are found. I don't think we have 355 either. You don't have the appendix. Well, we have the appendix. This is the joint appendix. Oh, I am very sorry. You're probably working from the entire record. No, I'm not. I'm working off of the appendix, and it should be in there. Well, I couldn't find it. You know what? Because what it is, Your Honor, is if you look at the excerpts of the prosecution history, it's the fourth item down on the table of contents. It skips around pages. I'm happy to provide mine, but I can also, if you'd like, I could provide a supplemental brief. So you're saying there is a page, what was it, 355 in this book? There should be. There should be, but it's not in sequential order. You're not going to have every single page. The point here is simply that the claim language uses the word predetermined. The spec itself contains tables. There is information that was provided to the Patent and Trademark Office of usage of the invention by the company that it was developed for. There are so many examples of its usage. So what is your understanding of the claim, that it selectively blocks certain subcategories of international law? That's correct. Now, where does it say that in the spec, and how does it teach us how to do that? It talks about the claimant's... How does it say, okay, now we know we have an international access call because we're looking at the third category of digits in the dialing sequence. Now let me teach you how we're going to screen out certain of those international access calls from others. Where does it say that in the spec? I'm sorry, could you repeat the question, Your Honor? Sure. I think you want to convince us that this claim is for screening out only a certain subset of all possible international access calls that can be made from a telephone apparatus. Correct. And I want to know where in the spec does it talk about that concept and also talk about how this inventor achieves that result. Okay, well, before I get to that point, I think that this may help answer your question because you had asked a question about the prosecution history before, and I hadn't gotten to that. No, I'm more interested in this question. Okay. It actually, I think, is relevant to the question. I think I want to clarify. Are you asking how it would differentiate between fraudulent and legitimate calls? It could be any subset. You want us to believe that it's not going to block all international access calls. That's what you're saying the claim doesn't do. It only blocks some international access calls. I'd like to know where in the spec it says that, and I'd like to know where in the spec it teaches us, the readers, how the inventors go about achieving that result in screening out some of the international access calls but not all of the international access calls. Okay, well, the spec contains, as I had mentioned, it talks about, if you look at columns 5, you see that lines 10 and lines 20. It will talk about, in an exemplary embodiment of the present invention, detection of one or more of the following digits in a dialing sequence results in the blocking of a telephone call, and then it provides three examples of 636 as an embodiment. The next table provides three, and then it says, if entered into a telecommunication device which is not in accordance with the present inventor, well, it explains that this call would be able to take place without authorization, and then it explains, if you go down to the next paragraph, which is roughly between lines 40 and 45, additional digits may be interposed between predetermined, I'm sorry, these new, can be programmed to detect when these digits have been entered and cause a switch to open upon detection. The switch would cause, there's two ways that there's prevention in this pattern. Does your spec disclose any algorithms for how the microprocessor 130 would be programmed to achieve these desired functions? That, I'm not sure about, Your Honor, because that particular issue wasn't here on appeal. I could get back to you on the actual mechanics of the algorithm. It's on column four, line 26. It says, program memory 140 includes appropriate software routines in order to prevent the use of telecommunications device 100 if particular conditions are met. Right, and the particular conditions are the issues that's on appeal. Appropriate software routines. I didn't see anywhere in the spec any more detail about what those, you know, purported appropriate software routines might entail. Right. I think that that would be, to get to the actual mechanics of the algorithm, I would have to get back to, I'd have to file a supplemental brief on that particular issue if necessary. I have a very simple-minded understanding, which may be as inaccurate as it is simple-minded, but my understanding was that all the invention does is to say, if I see any of the following one, three, six, or, as in your view, any of the following number of these codes, such as 01 or 011 in the third place, then, boom, I block it. No, it doesn't say that. It doesn't, well, I'm trying to be helpful to you. Oh, sure. So don't fire on me. Okay. It seems to me that the, correct me if this is not correct as to the way it works, but what this invention does, it sounded to me, is if it looks to the third place and if it sees one of the codes or one of a large number of potential international codes, but one that it has been designed to pick up, it blocks the call. If it sees, oh, you can design the system to block 01 as only 01. Correct. And your argument is it looks to the third place, if it sees 01, block. If it sees anything else, including any other 011 or 809 or anything else that's international, it doesn't block. That's your position, correct? That is, and it's supported by all the intrinsic evidence and the prosecution history as well. The statements made before the PTO do not disclaim that interpretation in any way. In fact, they support it. So that's our position. Ms. Stowe, your time is up. We'll give you two minutes back in rebuttal, and when you come back, it would be best if you do not talk while the judges are talking. Thank you, Your Honor. Mr. Cotter. Good morning, Your Honor. This is John Cotter from KNL Gates for the appellee conditional cross-appellant sprint. There are a number of questions brought up on the claim construction dealing with the all-international calls that I think are important. In context, I think it's clear that the claims, if you go to the claim language, we're not talking about a clear disavowal issue here. If you just go to the claim language, the claims say if the call is international, in the case of claims 22 and 15, if the call is international, it's prevented. And in the case of claim 8, it's a little more convoluted. If the call is not international, it's allowed. In other words, if it's international, it's not allowed. There's no equivocation in the claims about what international calls are blocked or what non-international calls are permitted. All international calls are blocked. There's no doubt about it. What do you do with claim 9, which is a dependent claim, which is 8, that says the predetermined signals correspond to 0, 1 calling sequence? Right. One of the many dialing sequences that are international access calls. Right. I understand the argument that the plaintiffs, that the appellants make on claim 9. I didn't understand your response. My response is first that that argument has never been raised before. I realize this is a de novo review. But the claim interpretation rule as far as claim differentiation does not, an independent claim that was not discussed below and was not part of the, was not charged with infringement, does not, should not wag the dog of the independent claim and how that's construed. Well, but let's back away from the arguments that, this was raised on appeal. And I'm concerned with what that claim says about the meaning of predetermined. Why does it not suggest that predetermined can be the entire set of international access codes or any subset of such international access codes as elected by the implementer of the invention? Well, on the term predetermined, predetermined means, as Gamino admits in his brief, it means determined beforehand. In other words, it's not done during the process. My question is were they predetermining all international access codes or only predetermining potentially some international access codes? As in the predetermined signals which are used to accomplish international dialing limitation. That's the limitation I'm talking about. Right. Now why is that not, why is your position not inconsistent with claim 9 which says predetermined numbers 01 and none others? Well, I can speak to the fact that the discussion during the, you know, not only in the specification but the back and forth during the file, during the prosecution of the file history was about the independent claims and talking about what they were capable of doing or not doing. And in every case, the question was just simple binary. International blocked, not international not blocked. So, you know, claim 9 is something that, and that was in existence, it came into the case at some point later on, but it was part of the record, part of the file history record, but even after that was part of the record, Mr. Gamino said repeatedly to the patent office, if it's international it's blocked, that's my difference from the prior art, and indeed the board seemed to rely on that in granting his claims. I can't explain claim 9 any more than to say that it's clear what the independent claims mean from the specification in the file history. And Mr. Stowe's argument I think sums up, at least if this is an accurate summation, is that when the reference to all international calls is a reference to capacity, not compulsion, that the invention has the capacity to perform this, but it isn't necessarily always going to do that. What's wrong with that argument? It's a way of characterizing the prosecution history. I don't think that's how it's characterized. You have a situation where you have prior art that blocks some, and there are rejections, repeated rejections on that prior art, and the response back is, oh no, my claims don't just block some, they block, if it's international, they block the calls.  In the specification, it's a matter of it's international, it's blocked. But isn't it a way of looking at that language, it's maybe a little bit loose, the language, but is a way of looking at that language to say that the distinction is I am blocking, my system is capable of blocking on an international versus not international basis, but I can do that selectively, that I can do some international calls, but it's always going to be based on international nature of the calls. Why isn't that at least a plausible reading of that language? It did not come up until litigation when it was convenient for Mr. Camino to bring it up, and there's no support, to Judge Chen's point, where does it say something about what predetermined means, where does it say something about less than all being blocked or how you determine that? That nowhere appears in the specification of file history. In fact, as Mr. Camino admitted, he would have, in his brief, his reply brief, he should have qualified his statements in the file history if he wanted a construction at that. He admits in hindsight what's stated in the file history effectively was not enough to try to, you know, recraft his claims for the way they're written, or certainly to recraft his claims in the way he suggests that they should be interpreted now, which as Your Honor, Judge Bryson, you know well, is something that's been considered by two district courts. You know from the prior appeal, this issue came up and was briefed. It was not decided because the Van Moore invalidity was the decision basis of the appeals court, but this issue has been decided by two district courts. The court in the Southwestern Bell case several years ago considered the file history, considered all the arguments, considered the specification and the different claims, and it came up with this interpretation that all international calls are blocked. Similarly, Judge Roof in this case below, she was aware of the Southwestern Bell case, but she in no way rubber stamped it. She had a Markman hearing herself. She had experts testify. She considered the file history, and she came to the same conclusion through her own independent analysis. Are you going to address the cross appeal? Yes, I'd like to when you're ready. I'm interested in asking you to focus on the question, which I think is the pivotal question for the cross appeal, of whether the additional claims that were, the claims that Gamino sought to remove from the court's consideration in SWB remained in that case at the time the summary judgment was issued and at the time of the appeal. Yes, and so just to go back through it very quickly, the timing is discussed in our brief in detail that lays it out in a fashion, but the timeline is Gamino files a suit against Southwestern Bell. He raises specific claims, including the claims that are at issue here as to whether or not they were ultimately ruled invalid in Southwestern Bell, but he specifically mentions them. Southwestern Bell counterclaims for invalidity. The case proceeds on. There is a summary judgment motion filed, a cross summary judgment motion filed, including one by Southwestern Bell for summary judgment of invalidity based on the Van Moore Doctrine, in which it says all the claims are subject. It had its counterclaim. It then files summary judgment. It mentions claims specifically. There is a summary judgment hearing, and one of the things the judge mentioned, and it's in the record below at Southwestern Bell, is he said, you know, too many claims here. Mr. Gamino, for trial, you really ought to thin it out. Okay? That's basically discussion. I'm paraphrasing. Mr. Gamino, subsequent to that at some point, files, unilaterally files a paper that says, here are the claims I'm alleging are infringed. He now puts a new, he had a prior allegation, which I didn't mention in my recounting, where he not only put it in his complaint, but he also specified what claims are at issue. He does that, a new version of that, after summary judgment, and then there's no order, there's no stipulation, there's no court statement about Mr. Gamino's alleged withdrawal of certain claims. Instead, what happens is the judge in Southwestern Bell considers the summary judgment arguments and briefing and makes a ruling, not only on the Vanamore issue, but also on non-infringement and claim interpretation, and in that non-infringement decision, he discusses at least two of the claims that are at issue here. So the judge's decision comes after Mr. Gamino's unilateral statement of supposedly withdrawing claims, and that decision includes discussion of claims that were supposedly unilaterally withdrawn. So the court has... Go ahead. No court has ever, other than Judge Roof, has ever said that claims were effectively withdrawn by Mr. Gamino. There's no doubt he wanted to do that, but I don't think he effectively did that, and there's no indication, as a matter of fact, the indication is the other way, that the judge in Texas, in Southwestern Bell, didn't see that as an effective withdrawal of claims. And your view is once... If those claims were in the case at the time of the summary judgment in that case, that there's collateral estoppel here with respect to all claims? Those particular claims. We don't have to go beyond all of it. And others, I take it, two other claims that are at issue here that were not at issue in the summary judgment, 9 and 23, is that right? Right. And those claims have been withdrawn from this case. They've been withdrawn from this case? There's an interrogatory response that they filed, that they served, that said they're not alleging 9 and 23 are infringed anymore. They had originally been stated in this case in the complaint. There have been infringement contentions that listed 9 and 23. And this is not in the detailed record that you have. But there have been infringement contentions. And then they said, we don't have enough information on 9 and 23. And subsequent to that, it was like, we're not raising 9 and 23 anymore. Are those the only ones that got withdrawn? I don't recall, Judge Chen. It's certainly the only ones that we're talking about, we've talked about today. But all the rest of the claims that are asserted in this case would be barred by collateral estoppel, I take it, in your view at least, if the claims that were attempted to be withdrawn in the SWB case were not in fact withdrawn. Correct. Okay. And is there any time for rebuttal, if I may be honest? We will save it, but only with respect to anything that needs to be rebutted concerning the cross-appeal. Understood. Thank you. Thank you, Mr. Cotter. Ms. Stowe. In response to Mr. Cotter's statement that the Camino stated that he should have said that he should have used additional language, that's not what he said. He explained fully in the reply brief why he used the statement all international calls to distinguish prior art. He was differing, he was saying that his invention was different because these general call blocking technologies did not teach focusing on the third plurality. If you look at the Board of Patent Appeals ruling rejecting all the patent examiner's objections, you can see, and the prosecution history in general, you can see why those statements were made. The overall reps make clear that during the prosecution history, as do the specification in the language itself, that the patent refers to but not all based on the user. As it relates to the cross-appeal, Sprint accepted and cited to those amended claims. They never objected to the filing of the amended claims. The amended claims were filed because the judge asked them to be filed. They were properly docketed and there's no authority cited for the proposition that some document that was properly amended should govern this case. And under the Vanmore Doctrine, if it's an unassertive claim, it doesn't matter. You can't use it for a collateral estoppel purposes. You have to look at the 800 adept case which is cited in our brief which would show the court that you can't use assertive claims as a basis for collateral estoppel against unassertive claims. But if the judge regarded those claims, didn't dismiss those claims and regarded them as still in the case, then collateral estoppel would apply, correct? Let me ask the question this way. If you're wrong in thinking that those claims were properly removed from the SWB case, then you lose this case, correct? I don't believe so. Tell me why. Because this case is different. That validity argument was based on the prior cell doctrine involving a different technology that's not at issue in this case. Why does that matter? Collateral estoppel applies to a judgment. There's a judgment of invalidity as to those claims. Why does that judgment not bar you from prosecuting those claims? Because in a situation under the doctrine of prior sale in this particular instance, you've got a different technology and a different claim. Like a different technology that's different in a lot of ways. But you don't have that validity, right? Correct. But when you're basing it on the prior cell doctrine and the court does not do a complete claim construction analysis because it does a proxy analysis based on the allegations of infringement, you're not getting a full hearing on the merits that's required. You have to litigate every claim on the merits. The claims in this case and the technology in this case are not analogous to the ruling in SWB. That's just my opinion. I didn't brief that issue. But those claims were fully litigated on the issue of validity at all defenses that were considered to be appropriate at the time were raised, I assume, and rejected on validity. So they were invalid. The claims were invalidated. That would seem to me to bar their further assertion as a matter of collateral estoppel. Now, setting aside the issue of whether they were withdrawn. I believe that it does not because I think under collateral estoppel you would have had that the court would have had to do a full claim construction analysis as to those claims. And those claims actually have very different features than the claims at issue with regard to the Sprint technology. Well, we're trying to figure out the scope of the ruling in SWB. And your opposing counsel points out that the district court in its summary judgment decision pointed to some of the claims that your side had attempted to unilaterally withdraw. So isn't that some indicia that at least the district court judge did not grant the withdrawal of those claims and in fact understood those claims to still be part of the case? I don't believe so, Your Honor, for two reasons. Number one, the ruling was specific on validity as to the asserted claims which were properly documented at the court's request. But also, that discussion was in the context of the infringement analysis. So I don't believe it's pertinent to the discussion of the validity analysis. I guess, why would the district court judge reach the non-infringement ruling on those claims if he didn't believe that those claims were asserted? I can't say why he did that, but I do know that the order did only invalidate the asserted claims. Okay. But it didn't identify a number of the asserted claims. No, it was expressed. Correct. The question still remains which claims were asserted. Right. I think that Judge Ruth's position there was it says asserted, and those were the ones that were asserted at the time. I think that was the right answer because Mr. Gamino should have an opportunity to litigate unasserted claims, and where that was only ruled upon as to what was deemed to be the asserted claims, it's kind of compelling. It would be harsh of a result for that to be interpreted in a way that's actually contrary to what was the amended asserted claims as of the date and was filed five months before the court ruled on summary judgment. I agree the record is less than crystal clear, but what about the second piece, the second clue in that record, which is, I guess, your petition for panel rehearing or rehearing in bank after this court affirmed the validity ruling in SWB where I think you had indicated in your brief or your side stated quite clearly that all the claims have been invalidated and it didn't account for the fact or try to parse out the claims that you had tried to unilaterally withdraw. I don't believe that the claims were unilaterally withdrawn, Your Honor. I think that was done at the direction of the court, and as I said... Do you know the piece of the briefing that I'm talking about in your side's petition for panel... I was just... ...rehearing in bank? I was just going to say that I am unaware of us taking the position that the unasserted claims were invalidated. It's my understanding, Your Honor, that our position has always been that only the asserted claims were invalidated. Thank you, Ms. Jones. Mr. Carter has little time on the cross field. I believe, really, only if Your Honors have questions on the cross appeal. Well, I have a follow-up question on Judge Chen's question, which is, can you point us to the statement or statement in the petition for rehearing that attributes the court's ruling to all the claims as opposed to just the narrower group of claims? It's cited in footnote one... Is this in the appendix, by the way? This... It's appendix page 15, I believe. That might be citing the district court. Oh, yeah. Excuse me. A, 1874 to 75. 74 to 75. All right. Go ahead. And that was... That is what, I believe, Judge Chen was talking about, and that's something that was ignored by the district court, and that's... And where is the particular statement that you rely on to say that they had embraced all of the claims as opposed to the smaller subset of claims after their attempt to withdraw some? Is it the... The district court found that SWB's prior art anticipated all claims of the patent? Yes. Is that what you're relying on? And also, the district court's opinion on which this court is based its opinion only addresses 48 of 53 of D'Amino's claims.   And those 48 would be... Would include, I take it, the... The... The... The... The... The... The... The... The... The claims that are at issue here. Yes, that's correct by virtue of preference. All right. Thank you, Your Honors. Thank you, Mr. Carter. The case will be taken under advisement. All rise.